JOSEPH L. McMANUS AND OTHERS, PROSECUTORS, v. MAURICE H. CALDWELL, DIRECTOR OF PUBLIC SAFETY OF THE CITY OF ORANGE, AND CIVIL SERVICE COMMISSION OF NEW JERSEY, DEFENDANTS.

Submitted May 5, 1942—Decided September 28, 1942.

112

Before Justices CASE, DONGES and COLIE.

For the prosecutors, *Lord & Lord* (*William A. Lord*).

For Maurice H. Caldwell, Director, *Joseph F. Zeller* and *Edmond J. Dwyer*.

For the Civil Service Commission, *David T. Wilentz*, Attorney-General, and *Harry A. Walsh*.

The opinion of the court was delivered by

CASE, J.   Prosecutors, chancemen of the City of Orange, seek to set aside the appointment, on December 26th, 1941, of Gordon F. Miller, John J. Dyer and Arthur L. Berke as patrolmen of the police department of that city on the ground that the named appointees were not then and had not been chancemen of the police department.   The appointments were made from a list of eligibles certified to the Director of Public Safety by the Civil Service Commission of the state as the result of an open competitive examination which had been conducted by that commission.

It has been held that chancemen of the City of Orange are regular members of the police department, appointed for part time service, *Albert* v. *Caldwell,* 123 *N. J. L.* 266.   That decision was rendered on a quite different issue, but it is reasonable to assume that if the chancemen are members of the police department on the question of tenure they are also on the question of promotion.   And, on the principle of *stare decisis,* we hold that they are such members.

Further, a city ordinance adopted on January 9th, 1895, provided that "no appointments of policemen or members

of the police department shall be made of any person * * * unless he shall have been appointed a chanceman for at least six months prior to the application for appointment as a member of the police department, and shall have actually served the city as chanceman for three months." But on November 2d, 1937, following a referendum vote, the Civil Service Act became effective in the city. Such ordinances as were in conflict with that act were thereby superseded.

*R. S.* 11:22-34 (part of the Civil Service legislation) provides that "a vacancy in a position in the competitive class shall be filled, as far as practicable, by promotions from among persons holding positions in a lower grade in the department, office or institution in which the vacancy exists." The position of patrolman is in the competitive class. Therefore, the appointments should have been on a promotional basis from chancemen if that course was practicable. Examinations are essential to promotion in the competitive classes of the classified civil service. Under the provisions of the Civil Service Act, *R. S.* 11:22-34, "promotions shall be based upon merit, to be ascertained by examinations provided by the commission, and upon the superior qualifications of the person promoted as shown by his previous service, due weight being given to seniority and experience."

The chance force of the City of Orange consisted of more than fifty members—the exact number is said to be unknown. Some of the members had reached fifty and even sixty years of age. Some had never performed any duties after their appointment. Others had served only a few days. Still others had rendered service on a considerable number of days. The majority, perhaps all, of the members of the chance force were regularly otherwise employed in private business or industry. On the recommendation of its assistant chief examiner and director of classification that it was neither in the public interest nor practicable to conduct a promotional examination confined to chancemen to fill the patrolmen vacancies in the Orange police department, the Civil Service Commission directed an open competitive examination, and both chancemen and non-chancemen—

seventy-seven in all—took the examination. Fourteen candidates passed the examination and sixty-three failed. There were twelve chancemen who took the examination; seven of them passed and five failed. The seven were appointed as patrolmen. Thereafter, there being need for further patrolmen in the department and there being no other chancemen on the certified list of eligibles, the Director of Public Safety named Miller, Dyer and Berke, non-chancemen, who had taken and passed the examination and who had been certified as eligibles by the Commission. Those appointments are the subject of this review. The chancemen who prosecute the writ number sixteen. Four of them took the examination and failed. The remaining twelve did not take the examination.

The dispositive question is whether prosecutors were legally harmed when the Director of Public Safety, after appointing all of the chancemen who had successfully passed the competitive examination, proceeded to appoint persons who also had successfully passed the examination and were certified as eligible but were not members of the chance force. It was said by Mr. Justice Parker, writing the opinion for the Court of Errors and Appeals in *Albert* v. *Caldwell, 127 N. J. L.* 203: "As we view the matter, no legal wrong was done to the chancemen by examining others with them or indeed until the ordinance was violated by the actual appointment of an outside candidate not a chanceman, where there were chanceman eligibles who had passed the examination." It appears to us to be implicit within that statement of the law that no legal wrong is done chancemen by examining others with them, and that, further, no legal wrong is done chancemen in the making of an appointment of an outsider who has passed the examination unless there are chanceman eligibles who have passed the examination. It is argued on behalf of the prosecutors that the legal view so expressed in the cited opinion is *obiter dictum;* but we think otherwise. It appears to us that the quoted matter constituted the reasoning upon which was reached the conclusive disposition of the issue in that case, namely, the presence *vel non* of laches in seeking the assistance of a writ of *certiorari* to correct an

alleged wrong. It was further said by the Supreme Court in *Van Volkenburgh* v. *Civil Service Commission,* 127 *N. J. L.* 479, affirmed September 18th, 1942: "We take the view that no legal wrong would be done to them (viz., chancemen) by examining others with them or even thereafter unless and until there should be an actual appointment of an outside candidate not a chanceman in disregard of chanceman eligibles who should have passed the examination."

The exigencies of public welfare, the efficient manning of the police departments and the obvious necessity of having an available list of competent men ready for appointment when the need comes create a problem which must, in the common interest, be recognized. In our opinion a chanceman who either fails to take the examination that is open to him as a preliminary to promotion or who, taking the examination, fails to pass the same is without substantial ground to complain of the appointment of non-chanceman eligibles, particularly when the chanceman eligibles have all been elevated to the desired position. Further, we find, factually, that it was not practicable, under the circumstances, to confine the examination to chancemen and that the vacancies were filled, as far as was practicable, by promotion from among the chancemen. The preference given to those chancemen who had demonstrated their fitness for the position of patrolmen met, as we believe, the promotional requirements of the statute, and, so far as the ordinance is extant, of the ordinance.

The writ will be dismissed, with costs.